UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

02 NOV 27 PM 12: 04

DISTRICT COURT
N.D. OF ALABAMA

MARY RICE,                        ]
                                  ]
    Plaintiff(s),                 ]
                                  ]
vs.                               ] CV 02-N-02099-E
                                  ]
TERMINIX INTERNATIONAL COMPANY,   ]
                                  ]
    Defendant(s).                 ]

ENTERED
NOV 27 2002

**Memorandum of Opinion**

### I.  Introduction

The court has for consideration defendant's motion to stay pending arbitration and for an order compelling arbitration of all claims, filed October 2, 2002. (Doc. #4). The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, the motion will be denied.

### II.  Facts

The plaintiff, Mary Rice, is a resident of Calhoun County, Alabama. The defendant, Terminix International Company, LLP, ("Terminix") is a limited partnership organized under the laws of the state of Delaware with its principal place of business in Memphis, Tennessee. None of the general or limited partners of Terminix are citizens of the state of Alabama. The dispute between the parties arises out of a Termite Baiting System Protection Plan ("the Protection Plan"), issued by Terminix on July 15, 1992, which provides that Terminix will inspect and treat Ms. Rice's home for termites. (Doc. # 4, Exh. B). Ms. Rice



avers that her home is now infested by subterranean termites. She filed the instant lawsuit against Terminix on July 30, 2002. Ms. Rice raises claims for breach of contract, and negligent and wanton inspections of her house. (Complaint ¶ 8).

The Protection Plan includes the following arbitration provision:

> 10. ARBITRATION. The Purchaser and Terminix agree that any controversy or claim between them arising out of or relating to this agreement shall be settled exclusively by arbitration. Such arbitration shall be conducted in accordance with the Commercial Arbitration Rules then in force of the American Arbitration Association. The decision of the arbitrator shall be a final and binding resolution of the disagreement which may be entered as a judgment by any court of competent jurisdiction.

(Doc. # 4, Exh. A). Terminix claims that all of Ms. Rice's claims are subject to arbitration pursuant to this provision. Ms. Rice, however, contends that she contracted for Termite services on the telephone and has never seen the servicing agreement marked as Exhibit A. (Doc. #6, Rice Aff.). She further states that the arbitration provision was not discussed over the phone, and that she does not receive a copy of the contract when it is renewed each year. (*Id.*).

### III.   Discussion

Ms. Rice's sole argument against the motion to stay pending arbitration is that she never signed the arbitration agreement, never discussed the provision on the phone with Terminix and has never seen a renewal copy of the contract. As a threshold matter the court notes that, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT &T Techns. Inc., v. Communication Workers of Americas*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 593, 582 (U.S. 1960)); *First Options of Chicago,*

*Inc. v. Kaplan*, 514 U.S. 938, 941-43 (1995) (noting that the arbitrability of disputes depends upon whether the parties agreed to arbitrate). A party who moves to compel arbitration, bears the initial burden of establishing by substantial evidence (1) the existence of an agreement to arbitrate in (2) a contract or transaction substantially affecting interstate commerce. *Ex Parte Cain*, 2002 WL 1302532 (Ala. 2002) (quoting *Conesco Fin. Corp. v. Sharman*, 2001 WL 1558223) (Ala. 2001)). If the movant successfully meets this initial threshold, then the court engages in burden-shifting to determine whether issues of material fact exist. *Id*. In this case, the parties do not dispute the interstate commerce aspect of the transaction. Therefore, the court's analysis will focus on whether there was a valid contract compelling arbitration.

"When deciding whether parties agree to arbitrate a certain matter (including arbitrability) courts generally . . . should apply ordinary state-law principles that govern the formality of contracts." *Oakwood Mobile Homes Inc. v. Barger*, 773 So. 2d 454, 459 (Ala. 2000) (citations omitted). "The requisite elements of a contract include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of the contract." *Ex Parte Grant*, 711 So. 2d 464, 465 (Ala. 1997) (citations omitted). "Assent must be manifested by *something*. Ordinarily assent is manifested by a signature, but it can also be manifested by ratification." *Southern Energy Homes, Inc. v. Hennis*, 776 So. 2d 105, 108 (Ala. 2000).

Apparently, the defendant does not dispute the plaintiff's contention that she never received the contract. The court arrived at this conclusion because the defendant's chief argument is that the plaintiff ratified the terms of the contract (including the arbitration

3

clause) by accepting services.[1] "'Ratification' is an act by which an otherwise voidable and, as a result invalid contract is confirmed and thereby made valid and enforceable. ... One who was not originally bound by an agreement will become bound if he or she later ratifies the agreement, by affirming it through words or deeds. ... [and ratification] may be expressed or implied from the course of conduct." 17A C.J.S. *Contracts* § 128 (1999); *see also Facciolla v. Linbeck Const. Corp.* 968 S.W.2d 435 (Tex. App. 1998) (defining ratification as the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not legally bind that person and which that person had the right to repudiate).

Admittedly, "[a]n agreement to arbitrate need not be signed by the parties in order to be binding, so long as there is other proof that the parties entered into such agreement." 4 *Am Jur.2d* Alternative Dispute Resolution § 71 (1995). Indeed, an individual can be bound to an arbitration agreement that she did not sign when she has specifically requested services under a warranty agreement which also contains an arbitration clause. *See Southern Energy Homes, Inc. v. Ard*, 772 So. 2d 1131, 1134 (Ala. 2000) (compelling arbitration where the parties accepted the benefits of the warranty provisions); *Rush v. Terminix Int'l, Inc.*, 730 So. 2d 1175, 1178 (Ala. 1999) ("the existence of a contract may also be inferred from other external and objective manifestations of mutual assent."). Nevertheless, the acceptance of services is not always indicative of an agreement to arbitrate. *See Ex Parte Cain*, 1001030 (July 14, 2002 Ala.). *Cf. Owen v. MBPXL*, 173 F. Supp.

---

[1] The court notes that defendant also presents the argument that the claim should be considered to be akin to a third party beneficiary contract. This argument also appears to concede that the offer and acceptance terms were not clear to the plaintiff when she ratified it. Accordingly the argument will be adressed later in the opinion.

4

2d 905 (N.D. Iowa 2001) (refusing to compel arbitration in an employment case where the employer failed to establish distribution).

In *Ex Parte Cain*, Cain, a purchaser of a mobile home attempted to escape an arbitration agreement. 2002 WL 1302532 (Ala. 2002). There, the plaintiff received both a warranty agreement and a homeowner's manual; the manual, but not the warranty, included an arbitration clause. Cain argued that there was no binding contract for arbitration, while the manufacturer alleged that arbitration was proper because Cain accepted the benefits of the warranty. The Court ultimately held that the mobile home manufacturer's "unilateral enclosure of an arbitration provision in a home owner's manual is . . . insufficient as a matter of law to show that [Cain] assented to all the contents therein." *Id.* at *6.

In reaching its holding, the *Cain* court distinguished the case from *Southern Energy Homes v. Ard*, 772 So. 2d 1131 (Ala. 2002). There, the court compelled arbitration where a mobile home owner sued both the manufacturer and seller on breach of warranty theories. The plaintiff claimed that he was not contractually bound to an arbitration agreement with the manufacturer because the agreement was delivered inside a homeowner's manual and placed in a drawer. *Id.* at 1134. Unlike *Cain*, in *Ard* the arbitration clause was specifically placed in the warranty and court held that by ratifying the warranty – that is, requesting service under it, the parties subjected themselves to the arbitration provision. *Id.* at 1135.

5

Defendant contends that *Ex Parte Cain* is distinguishable from the instant case because there the warranty did not include an arbitration clause.[2] They liken the case to *Ard* where the parties ratified the arbitration clause by requesting services under the warranty because in this case the plaintiff specifically acknowledge that she requested services under the contract containing the arbitration clause. (Complaint at ¶ 7). Admittedly, the plaintiff's case is not an exact replica of *Cain*. Nevertheless, the distinguishing factors the defendant so heavily dwells upon, do not diminish *Cain*'s persuasiveness. The defendant cannot dismiss *Cain*'s central premise, accepting the benefits of a contract should not amount to a *de facto* ratification of all of its terms. Moreover, reliance on *Ard* is misplaced because, regardless of whether the plaintiffs in that case signed or otherwise ratified the warranty, the plaintiffs actually *possessed* the contract. Defendant's citations to numerous cases dealing with third-party beneficiary contracts are equally unpersuasive[3]. Those cases involved, at some point in time, a party that was aware of the contract terms and possessed the contract.

In this case, the plaintiff attests, and the defendant has not proven otherwise, that the plaintiff never received a copy of the contract, the plaintiff never entered into a discussion regarding the arbitrability of claims, and that in all the years of renewal the plaintiff has never received a contract. Defendant merely presents the court with an argument that its

---

[2] The court notes that in its original order it asked the *plaintiff* to show cause why its claims should not be sent to arbitration. Defendant replied with an additional brief without any further contact from the court.

[3] *See, e.g. Ex Parte Rush*, 730 So. 2d 1175, 1177-78 (Ala. 1999); *Infinity of Mobile, Inc. v. Office*, 727 So. 2d 42, 28 (Ala. 1999); *Georgia Power Co. v. Partin*, 727 So.2d 2, 7 (Ala. 1998); *Beaver Construction Co., Inc. v. Lake House, LLC*, 742 So. 2d 159 (Ala. 1999).

oversight is irrelevant because the plaintiff had her house inspected. Although the court in *Owen v. MBPXL*, 173 F. Supp. 2d 905, 925 (N.D. Iowa) dealt with an employment contract, the comments of the court are appropriate in this context. There the court declined to compel arbitration where the employer never gave the plaintiff a copy of the arbitration policy because "it would permit 'employers ... to enforce the most oppressive policies and disclaimers against employees as long as they kept a copy of [those] policies and disclaimers hidden away somewhere in the bowels of the company's facility, never having distributed the handbook to employees." *Id.* (quoting *Kartheiser v. American Nat'l Can*, 84 F. Supp. 2d 1008, 1015 (S.D. Iowa 1999)). The same concerns are applicable to the instant case – a company should not be able to compel arbitration on a contract it never makes available to the consumer. A contract to inspect is not the functional equivalent of an agreement to arbitrate. The court will not gloss over this point and compel arbitration where there obviously has been no meeting of the minds.

## IV.     Conclusion

In sum, the court is of the opinion that the motion to stay pending arbitration and for an order compelling arbitration is due to be denied. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 27th of November, 2002.

*[signature]*
EDWIN NELSON
UNITED STATES DISTRICT JUDGE